[No. 22502. Department Two. May 4, 1931.]

WINNIE HARLOW, *Respondent*, v. NORTH AMERICAN ACCIDENT INSURANCE COMPANY, *Appellant*.[1]

[1]Reported in 298 Pac. 724.

424

*E. H. Belden,* for appellant.
*P. C. Shine,* for respondent.

BEELER, J.—We shall refer to the defendant as "Company" and to the insured as "Hart."

The plaintiff, as beneficiary named in an accident and sickness insurance policy, brought this action upon the policy. The case came on for trial before the court and a jury. At the conclusion of the introduction of the evidence, the court instructed the jury to return a verdict for the plaintiff in the sum of one thousand dollars, the amount stated in the policy. Thereafter, the Company filed a motion for judgment non obstante veredicto, or, in the alternative, for a new trial. This motion was overruled and judgment entered in favor of the plaintiff. The Company has appealed.

The facts are: The Company is an insurance corporation organized under the laws of the state of Illinois, and is authorized to issue accident and sickness insurance policies. It maintains its principal place of business at Chicago, and has a branch office located at Denver, Colorado. Prior to and on February 16, 1928, one J. T. Luther was the Company's agent at Denver, and P. F. Vaughn was one of its solicitors working through the office of the Luther agency. Prior to and on February 16, Hart, a nephew of the plaintiff, a farm hand, was employed on a ranch near Denver, and on that day Vaughn procured his signature to an application blank for accident and sickness insurance, and collected only two dollars of the premium from him, which was turned over to the Luther agency. The

premium on this policy for one year was ten dollars. At the foot of the application blank, below the applicant's signature, was printed the following:

"IMPORTANT NOTICE

"All premiums are made payable in advance. Agent must collect the premium with the application."

This application was delivered by the solicitor to the Luther agency, and by it forwarded to the home office at Chicago. Thereupon the company issued the policy and mailed it to the Denver office. This policy was dated February 25, 1928, and countersigned by the Luther agency, and in part provides:

"The company in consideration of the statements in the application therefor, a copy of which is endorsed upon and made a part of this contract, *and the payment of the premium,* of ten (10) Dollars, hereby insures Bud C. Hart, . . . for the term of one year, etc." (Italics ours.)

On March 16, 1928, the solicitor again interviewed Hart and collected the further sum of three dollars, which was applied on the premium, and issued and delivered to Hart the following receipt:

"NORTH AMERICAN ACCIDENT INSURANCE COMPANY
GENERAL OFFICES ROOKERY BUILDING, CHICAGO.

"March 16, 1928.
"Received of Bud C. Hart an application for a 10 dollar policy series ———— in the North American Accident Insurance Company, and the sum of Five Dollars ($5.00) being payment in advance of ———— month's premium on Policy so applied for.

"Applicant will please notify the Company at Chicago, Illinois, should the Policy not be received within twenty days from date hereon.
"J. F. Luther Agency, 506 Patterson Bldg.
"Denver, Colo.   P. F. Vaughn, Agent,
"Form 662."

On March 19, 1928, Hart lost his life in a fire at Denver.

The company disclaimed liability because the premium had not been paid in full, and that the policy had not been delivered to Hart. Thereafter, suit was brought. The cause was tried to the court and a jury. At the conclusion of the testimony, the court instructed the jury to return a verdict for the plaintiff, on the theory that there was no disputed question of fact and that the questions involved were those of law. It may be said, parenthetically, that the evidence is comparatively brief, being limited, except for the formal proof on the part of the beneficiary, to the testimony of Vaughn and Luther, witnesses on behalf of the company, taken on written interrogatories. Respondent submitted no cross-interrogatories. The facts above detailed are established by the testimony of the Company's two witnesses.

Thus it will be seen there was no manual delivery of the policy to Hart prior to his death. The question, then, is: Was there constructive delivery?

In *Frye v. Prudential Insurance Co.,* 157 Wash. 88, 288 Pac. 262, the facts and questions involved were very similar to the facts and questions in the instant case, except that the facts here are more favorable to the insured than in the *Frye* case. Here the insured had paid one-half of the premium,—two dollars on February 16, and three dollars on March 16, which was delivered to and accepted by the local agency at Denver. In the *Frye* case no portion of the premium had been paid. Furthermore, in the *Frye* case the application provided that the policy should not take effect until "received" by the insured. The application here contained no such provision. Here, as in the *Frye* case, the application provided that "all premiums should be paid in advance." Here, as in the *Frye* case, the

agent had authority to take applications, deliver policies and collect premiums. Here, as in the *Frye* case, the company forwarded the policy from its home office to its agents, but placed no restrictions or conditions as to when the policy should be delivered. Here, as in the *Frye* case, the company claimed non-liability because the premium had not been paid in full, nor the policy delivered.

In passing on the question in the *Frye* case, we held that the mailing of the policy from the insurer's home office to the local office, for the purpose of delivery, constituted constructive delivery. The rule in regard to such delivery, as quoted in the *Frye* case, *supra,* is well stated in 14 R. C. L., p. 898:

"It is the intention of the parties and not the manual possession of a policy which determines whether there has been a delivery thereof. There must be an intention to part with the control of the instrument and to place it in the power of the insured or some person acting for him. Manual delivery to the insured in person is not necessary, nor is the fact that a policy has been turned over to the insured conclusive on the question of delivery. This matter of delivery is largely one of intent, and the physical act of turning over the policy is open to explanation by parol evidence. The deposit of an insurance policy in the mails, addressed to the insured, is a delivery to him and the same is true of the mailing or otherwise delivering the policy to the agent of the insurer with unconditional instructions to deliver the same to the insured, though it is otherwise where the instructions to the agent are conditional."

See authorities cited in the *Frye* case, *supra.*

In the case of *Pelaggi & Co. v. Orient Ins. Co.,* 102 Vt. 384, 148 Atl. 869, general agents representing several fire insurance companies issued a policy in the defendant's company covering plaintiff's property. A fire occurred before the policy was delivered. The

question raised was substantially identical to the question here presented. The policy had not been delivered nor the premium paid. The court held:

"The defendant says it cannot be held, because (1) its policy was not delivered until after the fire; . . . In support of the first of these propositions, the defendant points to the fact that its policy never left the desk in McAllister & Kent's [the agents] office. That a fire insurance policy must be delivered before it becomes effective may be assumed. Though we find no occasion to consider the question of delivery apart from that of cancellation, we may say in passing that it does not take much to establish a delivery of an insurance policy. Manual delivery is not indispensable. It is a question of intention largely. If a policy is written under an agreement therefor, and is complete and ready for delivery, so that nothing remains to be done but to pass it over to the insured, though it remains in the hands of the insurer's agent, a constructive delivery results, which satisfies the rule. In such a case, the insurance agent is deemed to hold the policy for the insured. *Porter v. Mutual Life Ins. Co.*, 70 Vt. 504, 508, 41 Atl. 790; *Stephenson v. Allison*, 165 Ala. 238, 51 So. 622, 138 Am. St. Rep. 26, and interesting and instructive note on page 29."

To the same effect see *Drucker v. Dutcher*, 33 Ohio St. 253, 169 N. E. 311.

■ The next question presented is: Did the Company and its agents waive the terms and conditions of the application and impliedly extend credit to the insured for the unpaid balance of the premium?

The premium on this policy was ten dollars. When the company's agent collected two dollars of the premium, he waived the terms and conditions of the application; the Luther agency did likewise when it accepted the application and forwarded it to the home office in Chicago; the company waived the terms by accepting the application and issuing and forwarding the policy to its local agent at Denver; the local agency at Denver

again waived the terms of the application when it gave the policy to its solicitor, Vaughn, for purposes of delivery. Furthermore, the policy acknowledged *full* payment of the premium. The policy was placed in the mail and sent to the Denver office without any restrictions or conditions as to when delivery should be made.

Courts generally hold that a condition in an application or policy requiring full payment of the premium before the policy takes effect may be waived.

"An insurance company may waive any condition of a policy inserted for its benefit." (Syllabus.) *Insurance Co. v. Norton,* 96 U. S. 234.

*New York Life Ins. Co. v. Ollich,* 42 Fed. (2d) 399, is a well considered case. The facts in many respects are very similar to the facts in the instant case. Ollich made a written application to the insurance company, through one of its soliciting agents, for a policy of life insurance, and named his mother as beneficiary. The policy required a semi-annual premium of $26.54. The application provided that "the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant, and the first premium thereon paid in full during his lifetime." The application further provided that only certain specified executive officers of the company could waive any of the company's rights in that regard.

The application was accepted, and the policy written and sent to defendant's branch office at Cleveland, Ohio. During the interim between signing the application and the arrival of the policy, the insured paid part of the premium. While the policy was in the hands of the agent, Ollich was shot and, as a result, died. There, as here, the company contended that the policy was not binding because the initial premium

had not been paid, nor had the policy been delivered. The court, passing on the question, said:

"Although the insurer may insert conditions in the application, requiring full payment of the first premium and delivery before the policy takes effect, such conditions are for its own benefit and may be waived. *Knickerbocker Life Ins. Co. v. Norton*, 96 U. S. 234, 24 L. Ed. 689; *Schwartz v. Northern Life Ins. Co.*, 25 Fed. (2d) 555, 558 (C. C. A. 9th), and cases there cited; cf. Williston, Contracts, § 760. Whether or not there is, in any case, a waiver, must be determined from all the facts and circumstances."

To the same effect, see *Stockton v. Sedalia Life Ins. Co.* (Mo. App.), 31 S. W. (2d) 108.

Another strong circumstance indicating that Hart was extended credit on the payment of the premium, is the issuance of the receipt by Vaughn on March 16, acknowledging receipt of five dollars as "payment in advance of ——— month's premium on policy, etc." and its delivery to Hart. If the agent Vaughn had understood that the policy was not to take effect until the premium was fully paid, it would have been a simple matter for him to write such notation on the face of the receipt.

One inference is that it was understood Hart should be permitted to pay the premium in installments. Hart paid one installment on February 16, and another installment on March 16. Furthermore, none of the company's executive officers in charge of the head office at Chicago testified in behalf of the company, and hence the inference follows they recognized the policy was in full force and effect from the date of its issuance, and that Hart was extended credit on the payment of the premium.

Nor did either of the two Denver agents testify they had received any instructions from the company's executive officers not to deliver the policy to Hart until

the premium was fully paid. Vaughn was asked what instructions, if any, he had received with reference to the delivery of the policy, but he made no answer to that portion of the question. Nor did Luther testify he gave any instructions to Vaughn not to deliver the policy until the premium was paid.

It is true, both Vaughn and Luther testified they retained possession of the policy awaiting full payment of the premium. It is true, agent Vaughn testified he told Hart, on March 16, that the policy would be forthcoming when the premium was fully paid. But it is equally true that neither of those agents testified they understood the policy was not to become effective until the premium was paid in full. Nor did they testify they informed Hart, or that Hart understood, the policy would not become effective until he paid all of the premium.

These circumstances, read in connection with the issuance and delivery of the receipt to Hart on March 16, together with the fact that from the very inception of the various transactions, beginning February 16, the terms and conditions of the application relating to the payment of premium were waived, not only by the local agents at Denver, but by the executive officers as well, all indisputably indicate that the parties thoroughly recognized Hart was extended credit on the payment of the premium.

The next question presented is whether the policy became effective, and if so, when? Appellant's counsel contends that the application is a part of the policy. With this we agree, with the qualification, however, that full prepayment of the premium was waived. When the application was received at the home office in Chicago and incorporated in and made a part of the policy, and the policy in turn was forwarded to the Denver office and countersigned by its local agent, a

valid contract of insurance became effectuated of that date,—February 25, 1928. On that date, the company agreed to assume the risk for a period of one year.

By accepting and retaining a portion of the premium, and issuing the policy, it affirmed the validity of the insurance for the period of one year, and by its conduct waived further objection to the validity of the insurance contract. By accepting the second installment of the premium on March 16, it again confirmed and ratified the contract. To hold that the policy on February 25 was not in force and effect would be tantamount to holding that the company could receive premiums without assuming liability. The law is quite well established that the date when a policy becomes effective is to be determined as of the time when the risk is assumed.

In the case of *Schwartz v. Northern Life Ins. Co.*, 25 Fed. (2d) 555, the Circuit Court of Appeals, 9th circuit, considered this identical question. There the agent for an insurance company at Oakland, California, obtained the insured's signature to an application blank, dated August 2, 1924, for life insurance, at which time the first annual premium was fully paid. This application was forwarded to the home office at Seattle, Washington. The Seattle office executed a policy dated August 14, 1924. The insured committed suicide on August 9, 1925. The question was whether the contract was made on August 2, at the time the application was procured, or on August 14, when the policy was executed. Passing on the question the court said:

"The principal question presented in the case is upon what date the policy became effective. The appellant says it was August 2, 1924. The appellee says it was August 14, 1924. The date from which a policy becomes effective is not necessarily determined by the date which it bears or the date of its execution or the

date of its delivery or by the date when the first premium is paid. It is the date from which the *risk commenced,* and it is determined by the meaning of the provisions of the insurance contract.'' (Italics ours.)

In the case of *Starr v. Mutual Life Ins. Co.,* 41 Wash. 228, 83 Pac. 116, this court, in effect, announced the same rule. There the insured signed an application for insurance on November 30, 1903, at Spokane, Washington, and was issued a receipt showing partial payment of the premium. The receipt further provided: ''Policy to take effect from date.'' The application was forwarded to the home office of the company in New York City through its Seattle branch. On December 8, 1903, the application was approved and the policy issued, and returned to the Seattle office for delivery to the insured. On the morning of December 8, but a few hours before the approval of the application and the issuance of the policy, Starr died from injuries he had received two days previously. When the policy arrived at the Seattle office, the agent of the company refused to make delivery. The application, in part, provided:

''I have paid $............... to the subscribing soliciting agent, who has furnished me with a binding receipt therefor, signed by the secretary of the company, making the insurance in force from this date, provided this application shall be approved and the policy duly signed by the secretary at the head office of the company and issued.''

Passing on the question, we said:

''The object of the second provision of the application, above quoted, is not entirely clear, especially from the standpoint of the insured. If there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application or not. If he lived until the applica-

tion was approved and a policy issued, it would seem a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiaries would derive no benefit from the insurance. The chief object of the provision would therefore seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, *and consequently no risk.* . . . If insurance companies deem it necessary for their protection to limit the operation of their contracts of insurance from the date of the issuance of the policy, or from any other date, it is very easy for them to say so, and to bring knowledge of that fact home to those with whom they are dealing. In this case, we hold that the receipt given constituted a present contract of insurance, subject to be continued or terminated by the approval or rejection of the application, and that the insured was not affected by any want of authority in the soliciting agent to enter into such a contract, unless notice of such want of authority was brought home to him.'' (Italics ours.)

Appellant relies on the cases of *Iles v. Mutual Reserve Life Ins. Co.,* 50 Wash. 49, 96 Pac. 522, 126 Am. St. 886, 18 L. R. A. (N. S.) 902; *Gibson v. New York Life Ins. Co.,* 102 Wash. 180, 172 Pac. 920; and *Vogel v. Equitable Life Assurance Society,* 145 Wash. 489, 261 Pac. 106. The facts in the first two cases, *supra,* are entirely dissimilar to the facts in the instant case. The question of the non-delivery of the policy was not involved in either of those cases. In the *Iles* case, *supra,* the insured gave his note in payment of the premium. The receipt given to him at the time he signed the application, expressly stipulated that failure to pay the note when due would terminate the insurance. The insured having failed to pay his note, recovery was denied. In the *Gibson* case, *supra,* the policy had been

in full force and effect for one year. The insured failed to pay the second regular annual premium. Neither of these two cases discusses the question here involved.

The *Vogel* case, *supra,* involved two separate policies of insurance, both of which, however, were printed on one sheet of paper, one a preliminary six months term policy covering the period from December 21, 1921, to June 21, 1922. The other a regular policy to be effective June 21, 1922. The preliminary six months term policy was evidenced by a stamped indorsement on the regular policy. These policies, evidenced on one sheet of paper, were sent by mail to the agent who, in turn, delivered them to Vogel, April 1, 1922. The premium on the short term policy was paid, hence no question was raised on that feature of the transaction. The premium on the regular policy became due June 21, 1922, and remained unpaid until August 2, 1922, at which time the agent tendered his check to the company. This check was returned, but just when or why is undisclosed. Vogel was accidentally killed August 5, 1922. The company claimed non-liability because the first premium on the regular policy was not paid on June 21, 1922, the time stipulated for payment in the policy, and that the agent had no authority to waive payment. Passing on the question, we said:

"Therefore, we have the question of waiver on the part of the society of payment in advance of the first premium installment on the regular policy, the one upon which recovery is sought in this action, and not a question of waiver of failure on the part of Vogel to pay subsequently maturing premium installments.

"The right of an insurer to have its policy regarded as not becoming effective, because of want of timely payment of premium thereon at the beginning of the term, plainly is a right which the insurer may waive so as to effectually inaugurate the rights of the insured under the policy, though the policy, or application as

436

part thereof, may expressly provide that it shall not become effective until the premium due at the beginning of the term has been paid. 37 C. J. 406; 2 May on Insurance, § 360; 1 Joyce on Insurance, § 86.''

The authorities generally hold that the terms and conditions in an application for insurance may be waived. Whether there is a waiver depends upon all the facts and circumstances surrounding each case. Waiver may be evidenced by delivering the policy before the premium is paid. Waiver may be evidenced by failure to collect the first annual premium in full as was done in this case. Waiver may be evidenced by mailing the insurance policy from the home office for the purpose of delivery, and especially is this true where the policy on its face acknowledges full payment of the premium, and contains no restrictions or limitations as to the time of delivery. Furthermore, here, the application contained no restriction that the insurance should not become effective until the policy was *"received"* by the insured, as is frequently provided for in applications for insurance, and as was specifically provided in the *Frye* case, *supra.*

Judgment affirmed.

MITCHELL, MILLARD, and FULLERTON, JJ., concur.

BEALS, J., concurs in the result.