[No. 24224. Department One. December 22, 1932.]

INGRY A. NEAT, as *Administratrix, Respondent,* v. THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant.*[1]

[1]Reported in 17 P. (2d) 32.

*Eggerman & Rosling,* for appellant.

*H. E. Gorman,* for respondent.

MILLARD, J.—Annually, for four years, the United States Fidelity & Guaranty Company issued a policy of automobile accident liability insurance to A. C. Miller. The fourth consecutive policy was issued March 4, 1931. On June 11, 1931, the insured automobile, while negligently operated by its owner (Miller), collided with an automobile of which Robert H. Neat was the driver. As a result of that collision, the latter sustained personal injuries which caused his death. To recover therefor, the administratrix of the estate of the deceased instituted an action against A. C. Miller and wife.

On June 18, 1931, one week after the accident, an investigation by an agent of the Guaranty Company disclosed that Miller was convicted October 22, 1929, and on April 16, 1931, of operating an automobile upon the public highway while under the influence of intoxicating liquor; that, for the first offense, Miller's license as an operator was suspended ninety days, and for the second offense his operator's license was suspended three years; that, on November 3, 1930, Miller was convicted of the crime of unlawful possession of one gallon of moonshine whiskey; and that, on March 31, 1931, he was convicted of "conduct tending to debauch public morals."

Defense of the action was tendered the surety on August 8, 1931. Denying liability on the policy, the surety notified Mr. Miller's counsel on August 20, 1931, that it refused to defend the action. On September 18, 1931, three months subsequent to the accident, and when it had all of the facts upon which it based its de-

fense in the garnishment action, the Guaranty Company notified Miller of the cancellation of the policy. Accompanying the notice was the company's check (which Miller rejected) for $16.20 as the amount of the unearned premium for the period September 23, 1931, to March 4, 1932. The company retained the remainder of the premium to pay for risk covered by the policy from March 4, 1931, to September 23, 1931, the period in which the accident causing the death of Robert H. Neat occurred. The notice of cancellation reads as follows:

"You are hereby notified that this company has elected to cancel its policy No. A 392686 issued to yourself, loss, if any, payable to yourself written to cover (describing automobile) from March 4, 1931, and that 5 days from the date of the service of this notice said policy, and the whole thereof, including Mortgage Agreement, if any, will stand cancelled without further notice, and thereafter be null and void, and no liability will exist thereunder. You are further notified that in the event premium having been paid, the unearned portion thereof will be returned on surrender or relinquishment of this policy. We are enclosing our check for $16.20 representing the unearned premium."

The trial of the action resulted in judgment on November 19, 1931, in favor of the plaintiff and against Miller and his wife. The writ of execution was returned unsatisfied. The return recites that the sheriff, after diligent search and inquiry, was unable to find any property, belonging to the defendants, "subject to execution by reason of insolvency sufficient to satisfy the within named judgment or any part thereof."

Thereafter, at the instance of the plaintiff, a writ of garnishment issued out of the superior court of Kitsap county against the surety, as garnishee defendant. The garnishee defendant's answer of "no funds" was controverted by the plaintiff's affidavit setting up the

liability insurance policy of which plaintiff claimed the estate of R. H. Neat, deceased, was a beneficiary, by virtue of the terms of that insurance contract. The garnishee defendant's reply to plaintiff's controverting answer was not filed until the day after the conclusion of the trial of the garnishment action. The court found that the plaintiff had established a right of action upon the policy, and that the Guaranty Company was indebted to the insured in the full amount of the policy. From the judgment entered against it in favor of the plaintiff, the garnishee defendant has appealed.

Counsel for appellant first contend that respondent failed to establish the insolvency or bankruptcy of the insured, which, under the terms of the insurance contract, is a condition precedent to recovery by a third party upon the policy.

The pertinent provision reads as follows:

"Section II. (2). Bankruptcy or insolvency of the Assured shall not relieve the Company of any of its obligations hereunder. Any person or his legal representatives who shall obtain final judgment against the Assured because of any such bodily injury or injury to or destruction of property and whose execution against the Assured is returned unsatisfied because of such insolvency or bankruptcy, may proceed against the Company under the terms of this Policy to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this Policy applicable thereto. Nothing in this Policy shall give to any person or persons claiming damages against the Assured any right of action against the Company except as in this Paragraph (2) provided."

The trial court found as a fact that the Millers were insolvent, "and have no money or property on which execution or other process can be levied for the collection of such judgment." There is no evidence contrary to that finding. Without objection, respondent

introduced in evidence the return to the writ of execution issued on the judgment in the main action. That return recited that, "by reason of insolvency" of A. C. Miller and wife, the sheriff was unable to find any property belonging to the Millers sufficient to satisfy the judgment against the Millers. That return was some evidence of insolvency of the judgment debtors. There was no contention—not a suggestion—in the trial court that the Millers were solvent.

Not having challenged the sheriff's return when it was offered in evidence, the appellant is in no position to now question it. The policy provision clearly does not require as a condition prerequisite to the maintenance of an action against the insurer by one "who shall obtain final judgment against the Assured" more than the sheriff's return to the writ of execution "unsatisfied because of such insolvency or bankruptcy" of the assured. Unless that return is controverted, it is sufficient evidence of the insolvency or bankruptcy of the assured to satisfy the policy provision above quoted.

■ It is next insisted that, as his driver's license had been suspended, Miller was illegally operating his automobile at the time of the collision of his and the decedent's automobiles. Appellant also contends that the proximate cause of the death of Neat was the criminal act of Miller in driving while under the influence of intoxicating liquor. Under such a state of facts, urges appellant, there can be no recovery upon the insurance contract, as a contract indemnifying the insured or another against the consequences of the insured's violation of a criminal statute, is void as against public policy.

As recited above, Miller's license as an automobile operator was suspended some time prior to the accident. The record does not disclose whether it had

been restored to him before the accident happened. The record does not sustain the contention that, at the time of the collision, Miller was under the influence of intoxicating liquor. Assuming, however, that Miller was operating his automobile illegally, inasmuch as he did not have an operator's license, and that he was under the influence of intoxicating liquor at the time of the collision, the appellant would not be thereby relieved of liability. The collision was due to the negligence of Miller, and the policy issued to him by the appellant specifically obligates the appellant to indemnify the victim of that negligence.

If Neat had been legally riding in Miller's automobile at the time he was fatally injured, the fact that Miller had no driver's license as required by statute would not preclude recovery by Neat or his administratrix from Miller's insurer. To absolve the insurer from liability, there must be illegality of use of the automobile as between the one injured and the named assured owner of the offending vehicle.

There is no provision in the policy exempting the appellant from liability for injuries sustained by a third person as the result of a collision with Miller's automobile if, at the time, Miller is operating his automobile while he is under the influence of intoxicating liquor. In the absence of such provision, the insurer is liable if the negligence of the insured is the proximate cause of the injury. In addressing ourselves to the question whether the failure of the insured to have the required driver's license would absolve the insurer from liability to one injured through the negligence of the insured, we said in *Odden v. Union Indemnity Co.*, 156 Wash. 10, 16, 286 Pac. 59, 72 A. L. R. 1363, and the language is applicable in the case at bar:

"If that condition [legally operating the car] means more than this, then indeed the insurance which the

policy purports to safeguard other persons than the specifically named assured becomes little short of no insurance; since the negligent acts in the operation of automobiles resulting in injury to persons are almost always violations of some public law. Manifestly, it is the intent of the policy to insure against this very large class of negligent acts."

The accident insurance case of *Zurich General A. & L. Ins. Co. v. Flickinger,* 33 Fed. (2d) 853, 68 A. L. R. 161, is an apt authority. The death of the insured was caused by drinking a cocktail containing wood alcohol served by his host. Under the national prohibition act, it was unlawful to sell, transport or possess the beverage in which the wood alcohol was contained. Holding that, in the absence of a provision in the policy exempting the insurer from liability for injuries sustained as the result of violation of law, the insurer is liable for an injury so sustained, if it does not appear that the policy was obtained in contemplation of such violation and the danger consequent thereon, the court said:

"It is a violation of law to drive an automobile at a greater rate of speed than prescribed by statute; but no one would contend, in the absence of special provision in the policy, that the beneficiary of one killed while speeding could not recover thereunder. To hold that death or injury from violation of law defeats recovery under a policy, in the absence of provision to that effect in the policy itself, would open up an avenue for evasion of liability which, so far as our investigation goes, no court has yet seen fit to open. If insurance companies desire to avoid liability on such ground, they should insert a clause in their policies to that effect."

■ Appellant next contends that the policy was void by reason of Miller's concealment that, prior to the issuance of the policy, he had been twice convicted of driving while drunk and convicted of two other

offenses, and that his driver's license had been suspended.

The circumstances upon which appellant relies are the four convictions described in the second paragraph of this opinion. On June 18, 1931, one week subsequent to the accident resulting in the death of Mr. Neat, the appellant's investigation disclosed the facts which it now contends constituted concealment on the part of Miller. It is insisted that such concealment rendered the policy, which was the fourth consecutive policy issued by appellant to Miller, void *ab initio,* and absolved the appellant from liability thereunder.

With full knowledge of those facts, the appellant did not endeavor, until three months thereafter, to cancel the policy. The appellant retained a portion of the premium to pay for risk covered by the policy during the period in which the collision occurred, and tendered the insured the unearned portion of the premium for the period of September 23, 1931, to March 4, 1932; that is to say, the appellant insists the policy was void from the beginning, and also insists, for the purpose of collecting the premium thereon, that the policy was valid for about seven months of the policy year. The positions are not consistent. The contract cannot be affirmed in part and rejected in part. The policy cannot be valid and void at the same time.

With full knowledge of all the facts, the appellant retained the premium for the period in which the accident happened. Appellant thereby asserted the validity of the policy for the period covered by the premium retained, and definitely waived every objection on which the validity of the insurance contract could be denied.

In *New Jersey Rubber Co. v. Commercial Union Assur. Co.,* 64 N. J. L. 580, 46 Atl. 777, the plaintiff stipulated with the defendant insurer that, when the

former accepted a twenty-five thousand dollar policy of fire insurance issued by the latter, other concurrent and proportionate insurance to the amount of seventy-five thousand dollars should be in the possession of the plaintiff. In reliance on that stipulation, the insurance company sent its policy to the assured. The policy was accepted by the assured, who did not fulfill the stipulation. Subsequently, a loss occurred. Fully aware that the assured had not complied with the stipulation, the company cancelled the policy, paid back the unearned premium but retained such portion of the premium as would have been earned by valid insurance from the date of the policy until the time of cancellation. The loss occurred within the period covered by the retained portion of the premium. It was held that the company thereby affirmed the validity of the insurance contract, and could not, in an action thereon, successfully deny the same. The court said:

". . . at the instant of contracting, the plaintiff made an affirmative representation that the concurrent and proportionate insurance contemplated was in existence. This representation was material to the risk which the defendant intended to assume, and in reliance upon it the defendant contracted. As it was false to the plaintiff's knowledge, the defendant was not bound.

"But the defendant's subsequent conduct does away with this defense.

"The terms of the policy covered the year from August 1st, 1897, to August 1st, 1898. The fire occurred October 21st, 1897, and on the following day the defendant's agent examined all the policies held by the plaintiff, and became fully aware of the fact that they did not comply with the stipulation. This matter was thereafter made the subject of negotiation and correspondence between the plaintiff and the defendant. On November 20th, 1897, the defendant gave the plaintiff five days' notice of its desire to cancel the policy, in conformity with the terms of that instru-

ment, and accordingly canceled the policy and paid to the plaintiff the unearned premium, retaining, however, the *pro rata* premium due for valid insurance to the amount of $25,000, from August 1st, 1897, to the time of cancellation.

"Clearly the defendant could not assert a right to the premium for valid insurance, and at the same time insist that the insurance had never been effected. By claiming and maintaining such a right, with full knowledge of all material circumstances, it unequivocally affirmed the validity of the insurance for the period covered by the premium, and definitively waived every objection on which its validity could be denied."

The judgment should be, and it is, affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.

