[No. 5908–1–III.   Division Three.   March 5, 1985.]

JEFFREY C. STANTON, ET AL, *Appellants,* v. PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, *Respondent.*

*Jeffrey L. Supinger* and *Witherspoon, Kelley, Davenport & Toole, P.S.,* for appellants.

*John C. Riseborough, Diane M. Hermanson,* and *Paine, Hamblen, Coffin & Brooke,* for respondent.

GREEN, C.J.—The underlying question is whether an automobile insurance policy issued by Public Employees Mutual Insurance Company (PEMCO) to the Stantons provided underinsurance coverage. The trial court answered in the negative and the Stantons appeal. We reverse.

This issue is presented on stipulated facts. The Stantons owned two cars, a 1976 Honda and a newly acquired 1980 Toyota. The Honda was insured with Consumers Insurance

Company. On August 26, 1980, they applied for a policy with PEMCO's agent to insure both vehicles. The Stantons were informed about and agreed to purchase uninsured motorist coverage, but underinsured motorist coverage was not discussed. A binder was issued that day by PEMCO providing immediate coverage for the 1980 Toyota but stated: "Please add 76 Honda Civic with *future effective date* of 9–5–80." It was agreed that no premium would be charged for the Honda for the period August 26 through September 5. While the agent quoted the Stantons a premium which included an uninsured motorist coverage charge of $17.80, when the agent forwarded the Stantons' application to PEMCO, she inadvertently typed a premium charge of $18.90 which included underinsured motorist coverage. On August 27, PEMCO's agent sent the Stantons a form for canceling the Consumers Insurance Company policy on the Honda which they signed on September 2 and returned to PEMCO's agent, who forwarded it to Consumers on September 5. The Stantons were never offered an opportunity to reject underinsurance coverage.

Prior to September 1, 1980, RCW 48.22.030 provided that no automobile liability policy be issued unless it contained a provision for uninsured motorist coverage as outlined in RCW 46.29.490. This statute was amended effective September 1, 1980, to also require underinsured motorist coverage unless the insured rejected such coverage.

On April 27, 1981, Mr. Stanton was seriously injured in an automobile accident while driving the Honda. The other driver had $60,000 coverage and the Stantons' claims were settled for those policy limits. Since Mr. Stanton's injuries and expenses exceeded that amount, the Stantons filed a claim with PEMCO for the remainder of their damages. PEMCO denied this claim informing the Stantons they were not covered for underinsurance since it was not expressly contained in the policy.

This action was instituted by the Stantons for declaratory judgment and damages. On September 23, 1982, PEMCO tendered a refund of the premium for underin-

sured coverage to the Stantons on the basis it was an over-charge. The court dismissed the complaint and the Stantons appeal.

The Stantons contend the court erred in concluding there was no underinsured motorist coverage. The court reasoned that since the policy for future coverage of the Honda was negotiated and issued prior to the September 1 effective date of the underinsurance amendment, there was no duty to inform or obtain the Stantons' rejection of such coverage even though the policy by its terms did not become effective on the Honda until after the amendment. The Stantons challenge this reasoning pointing out that since the Honda was not to be added to the policy until September 5, that date is the date of issuance on that vehicle and the underinsured motorist provision applies and is a part of the policy by operation of law. We agree.

██ ██ Rules regarding the construction of insurance contracts are basically the same as the rules covering other contracts, *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 912 n.2, 631 P.2d 947 (1981); *Mission Ins. Co. v. Guarantee Ins. Co.,* 37 Wn. App. 695, 698–99, 683 P.2d 215 (1984); but unlike other types of contracts, insurance policies must be interpreted in light of important public policy and statutory considerations. *Mission Ins. Co. v. Guarantee Ins. Co., supra* at 699; *Tibbs v. Johnson,* 30 Wn. App. 107, 110, 632 P.2d 904 (1981). There is a strong public policy in favor of assuring monetary protection and compensation to innocent victims of automobile accidents. *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 206–08, 643 P.2d 441 (1982).

> The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature

for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

(Italics omitted.) *Mutual of Enumclaw Ins. Co. v. Wiscomb, supra* at 208 (quoting from *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 332, 494 P.2d 479 (1972)). While the court in *Wiscomb* was discussing uninsured motorist coverage, the decision states this same public policy has been carried over into the underinsured motorist statute. *Wiscomb,* at 208. *See generally* Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819 (1980).

■ This case presents an interesting factual twist insofar as the effective date for coverage is concerned. There is no question that the effective date for coverage on the Toyota was August 26 and premium costs began to accrue on that date; on the other hand, the premium payment was computed to commence on September 5 on the Honda and the Honda was not to be added to the policy until that date. Consequently, we have one policy covering two vehicles, each having a different date for coverage to begin. The authors of 1 J. Appleman, *Insurance* § 101, at 328–29 (1981), state:

> Because of . . . various matters of public policy confronting the courts, there are no uniform rules laid down which absolutely govern the time when the contract is considered to go into effect. . . . As a general rule, it may be stated that wherever two equally sound legal results could obtain, the court has adopted whichever one would extend the policy protection to cover the loss.

In *Harlow v. North Am. Accident Ins. Co.,* 162 Wash. 423, 432, 298 P. 724 (1931), the court stated: "The law is quite well established that the date when a policy becomes effective is to be determined as of the time when the risk is assumed."

PEMCO argues however that the effective date does not govern the situation here because the amendment providing

for underinsurance coverage required rejection by an insured only as to policies *issued* after September 1. It contends the Stantons' policy was issued on August 26 and thus it was not obligated to obtain rejection of underinsurance coverage. In our view, the statute should not be read so narrowly. There was no coverage on the Honda until it was added to the policy on September 5 and that is the date on which they paid a premium for their coverage. That premium included underinsurance coverage. While the Stantons were unaware of that coverage, PEMCO by statute was required to include such coverage in the policy unless it was rejected by the insured. Thus, even though underinsurance coverage was not written into the contract, it was there by operation of law. PEMCO was fully aware of the requirements of the statute because it had sent several memos beginning as early as March 1980 to its agents advising them of the effect of the statute and directing the agents to inform insureds of the availability of this kind of coverage.

The Stantons paid for the coverage and it was not until long after this action was commenced that the refund was tendered to the Stantons. As we said in *General Motors Acceptance Corp. v. Grange Ins. Ass'n,* 38 Wn. App. 6, 12, 684 P.2d 744 (1984):

> When an insurance company has received payment of the premium for insuring certain property and the property is destroyed, the company, in good conscience, cannot avoid paying the loss on a mere technicality. *Metropolitan Mortgage & Sec. Co. v. Reliable Ins. Co.,* 64 Wn.2d 98, 102, 390 P.2d 694 (1964). Once the company accepts and retains payment of the premium covering the period when the accident happened, it cannot deny coverage existed on the automobile. *Glandon v. Searle,* 68 Wn.2d 199, 204, 412 P.2d 116 (1966); *Neat v. United States Fid. & Guar. Co.,* 170 Wash. 625, 17 P.2d 32 (1932).

PEMCO's contention that to hold the underinsured motorist statute applicable would be an impermissible impairment of the obligation of a contract is not well taken. Here the contractual coverage on the Honda did not com-

mence until September 5, after the effective date of the underinsured motorist amendment. Thus, the amendment would not impair the obligation of a contract.

In view of our holding, we need not reach the other contentions.

Reversed.

MCINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court May 24, 1985.