[No. 58912-7. En Banc. April 15, 1993.]

ROBERT CLEMENTS, *Petitioner*, v. TRAVELERS INDEMNITY
COMPANY, *Respondent.*

244

*Treece, Richdale, Malone, Corning & Abbott, P.S.,* and *Gary Krohn,* for petitioner.

*Ogden Murphy Wallace,* by *Steven A. Reisler,* for respondent.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae for petitioner.

SMITH, J. — Petitioner Robert Clements seeks review of a decision by the Court of Appeals, Division One, which reversed a King County Superior Court summary judgment order in petitioner's favor upon his claim for underinsured motorist coverage under his employer's insurance policy following his injury in an automobile collision while driving a company automobile within the scope of his employment. We reverse the Court of Appeals and uphold the judgment of the Superior Court.

## STATEMENT OF FACTS

Petitioner Robert Clements (Petitioner) was injured on September 4, 1986, when his vehicle collided with one driven by Ms. Bertha Ann Jones.[1] Ms. Jones was cited by the Everett Police Department for failing to yield the right of way. In November 1987, Petitioner filed a lawsuit for personal injuries against Ms. Jones. She was insured by Safeco Insurance Company (Safeco). Safeco paid its policy limit of $100,000 and the lawsuit was dismissed.[2]

Petitioner subsequently made an underinsured motorist (UIM) claim under his employer's insurance policy. The claim was denied.[3] At the time of the accident, Petitioner was employed by C. R. Bard, Inc. (Bard).[4] He was driving a vehicle leased by Bard and was acting within the scope of his employment.[5] Bard is a national account insured by Travelers Indemnity Company (Travelers). Bard's insurance broker was Seattle-based Marsh & McLennan, Inc.[6] From January 1,

---

[1]Clerk's Papers, at 13.

[2]Clerk's Papers, at 13.

[3]Petition for Review, at 2.

[4]Bard is headquartered in New Jersey, but does business throughout the United States. Respondent's Brief Opposing Petition for Discretionary Review, at 1.

[5]Clerk's Papers, at 3.

[6]Clerk's Papers, at 14.

1986, to January 1, 1987, Travelers provided insurance coverage to Bard under master policy number TRCAP-196T136-8-86 (Bard policy).[7]

The insurance policy listed C. R. Bard as the named insured and contained a Schedule of Coverages and Covered Autos in chart form.[8] The number "6" is indicated in the "Uninsured Motorists" section. Under Description of Covered Auto Designation Symbols the description for number 6 reads:

> OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance. This includes those autos whose ownership you acquire after the policy begins provided they are subject to the same state uninsured motorists requirement.[9]

The "Uninsured Motorists" section also refers to Endorsement CA 81. That endorsement states that "[t]his insurance applies only in the states indicated below" and lists 15 states (State of Principal Garaging) in which the policy provides uninsured motorist coverage and lists the limits of liability for the states.[10] At the top of the endorsement is printed in all capitals the words "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY" and "UNINSURED MOTORISTS INSURANCE — VARYING LIMITS." Washington is not included in the list.[11]

---

[7]Clerk's Papers, at 14.

[8]Clerk's Papers, at 33.

[9]Clerk's Papers, at 34. *Uninsured motorist coverage* applies when at least one person legally responsible for an accident does not have liability coverage. *Underinsured motorist coverage* permits recovery for the insured when the tortfeasor has insurance, but in an insufficient amount. The 1980 amendment to RCW 48.22.030 includes uninsured vehicles within the definition of underinsured vehicles. *See Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 707 P.2d 125 (1985); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insured*, 55 Wash. L. Rev. 819 (1979-1980).

[10]Clerk's Papers, at 36.

[11]The states listed by abbreviation are AZ, IL, CT, KS, MD, MN, MO, OR, WI, NH, NJ, PA, SC, NY, and VA.

Travelers acknowledges that no specific written waiver rejecting UIM coverage for vehicles registered in Washington was signed by representatives of Bard.[12] It maintains, however, that Bard did not intend to purchase UIM coverage in any of the states covered by the policy unless it was specifically required to provide such coverage under state law.[13] Travelers submitted the affidavit of Stuart Storch, the corporate risk manager for Bard, which included the following statements:

> 2. [I]n my discussions with our broker the question of uninsured motorist insurance came up, but I have no recollection of our specific discussion, nor do I know specifically when we talked about it. *I do know our intent has been to have uninsured motorist insurance on our automobile fleet only to the extent any particular state made it compulsory. If we had the option not to have uninsured motorist insurance, we did not want it nor did we want to pay for it.*
>
> 3. I have reviewed policy number TRCAP-196T1368 and its endorsements. *It provided uninsured motorist insurance only for certain states where, as the policy states, uninsured motorist insurance was required and could not be waived. The state of Washington is not included on the endorsement listing the states for which the policy provided uninsured motorist insurance.*
>
> 4. Policy number TRCAP-196T1368 and its endorsements *provided the liability and uninsured motorist insurance we wanted to have. By its own language, the scope of the insurance policy provided exactly what we wanted, and we got exactly what we paid for.*[14]

On May 9, 1990, Petitioner Clements filed in the King County Superior Court a declaratory judgment action asking the court to rule that the Bard policy provided UIM coverage.[15] He contended that public policy requiring mandatory coverage is established under Washington law and that Bard did not affirmatively reject UIM coverage in Washington. Travelers filed a motion for summary judgment on

---

[12]Brief of Appellant, at 8.

[13]Brief of Appellant, at 6.

[14](Italics ours.) Clerk's Papers, at 48-49.

[15]Clerk's Papers, at 2.

October 12, 1990.[16] On November 7, 1990, the trial court denied the motion and ruled that Petitioner was covered under the UIM section of the Bard policy.[17] Travelers filed its appeal on December 6, 1990, contending that Bard had rejected UIM coverage.[18]

On December 20, 1991, the Court of Appeals, Division One, reversed the trial court's denial of summary judgment to Travelers.[19] The court agreed with Travelers' position that the Bard policy, including its declarations, served as a functional equivalent of the written waiver required by statute. Observing that a court's duty in construing an insurance contract is to determine the intent of the parties at the time of the contract, the court stated:

> Here, as indicated in the record before the trial court, Bard's intent is clear. The company did not intend to provide UM coverage in those states where coverage could be declined. Further, Bard did not pay a premium for UM coverage in Washington.
> . . . There is no evidence indicating Bard intended any UM coverage in Washington. It is plain that Travelers intended to provide coverage to Bard *if, and only if*, Bard was required to purchase coverage in Washington. We hold the policy as a whole is a sufficient written waiver.[20]

On January 17, 1992, Petitioner Clements filed a petition for review in this court. We granted review on April 1, 1992.

## ISSUES

This case involves two principal issues: (1) whether UIM coverage may be rejected in the state of Washington; and (2) whether the insured in this case, C. R. Bard, Inc., rejected UIM coverage under its policy with Travelers Indemnity Company in a manner sufficient to meet the statutory requirement for written waivers under RCW 48.22.030(4).

---

[16]Clerk's Papers, at 9.

[17]Clerk's Papers, at 63.

[18]Clerk's Papers, at 66.

[19]*Clements v. Travelers Indem. Co.*, 63 Wn. App. 541, 821 P.2d 517 (1991).

[20]*Clements*, at 545.

DISCUSSION

■ On review of summary judgment, an appellate court engages in the same inquiry as the trial court.[21] Summary judgment is appropriate "if the pleadings, depositions, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[22] A material fact is one upon which the outcome of the litigation depends.[23] The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[24]

Petitioner Clements argues that RCW 48.22.030 (the UIM statute) mandates UIM coverage. To support his argument, he relies on RCW 48.22.030(2) and public policy.

RCW 48.22.030(2) states, in part, that:

No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person aris- ing out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . ..[25]

Petitioner argues that the statute mandates UIM coverage and that any agreement between Bard and Travelers to mod- ify that requirement is void. Petitioner cites *Britton v. Safeco Ins. Co. of Am.*[26] for the proposition that an insurer cannot

[21]*Marincovich v. Tarabochia*, 114 Wn.2d 271, 787 P.2d 562 (1990).

[22]CR 56(c).

[23]*Jacobsen v. State*, 89 Wn.2d 104, 569 P.2d 1152 (1977).

[24]*Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982).

[25]Laws of 1980, ch. 117, § 1, p. 361; Laws of 1981, ch. 150, § 1, p. 717; Laws of 1983, ch. 182, § 1, p. 996; Laws of 1985, ch. 328, § 1, p. 1124.

[26]104 Wn.2d 518, 707 P.2d 125 (1985).

avoid a statutorily mandated obligation. In *Britton*, the policy contained a UIM endorsement and the insurer sought to set off disability benefits which the insured received against the UIM coverage limits. In that case the insurance contract contained a UIM coverage endorsement[27] and limitation of liability was void. In this case, Bard did not contract for UIM coverage, but did not specifically decline it in writing or otherwise.[28]

The UIM statute provides that an insured may reject underinsured coverage in writing. RCW 48.22.030(4) states:

> A named insured or spouse *may reject, in writing, underinsured coverage* for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. *The requirement of a written rejection under this subsection* shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy.[29]

The UIM statute does not mandate UIM coverage, but requires all insurers to make UIM coverage available to Washington policyholders.[30] Once the coverage is offered, the insured is free to waive it.[31] Contrary to Petitioner's argument that the statute mandates UIM coverage, the Legislature has not actually required coverage.[32]

---

[27]*Britton v. Safeco Ins. Co. of Am., supra.*

[28]Petitioner's argument that as an "insured" he is entitled to UIM coverage presupposes UIM coverage under the Bard policy, even though Bard and Travelers assert there was no coverage and none intended.

[29](Italics ours.) Laws of 1985, ch. 328, § 1.

[30]*Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983).

[31]*Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 817 P.2d 841 (1991).

[32]*See Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 81, 683 P.2d 180 (1984) (on the issue of the validity of a motorcycle insurance policy exclusion, this court said "[s]ince the Legislature has not seen fit to require mandatory insurance coverage, we will not replace its assessment of public policy with our own.").

The evidence presented by Respondent Travelers suggests tangentially that UIM coverage was discussed between the insurer, Travelers, and its insured, Bard. The affidavit of Stuart Storch, corporate risk manager for Bard, at least tends to support Respondent Travelers' position that Bard neither wanted nor paid for UIM coverage and that Bard intended to exercise rejection under the Washington statute. This does not, however, respond to the question whether that rejection was in writing.

Petitioner Clements also argues that the UIM provisions reflect a public policy in favor of assuring full compensation to victims of motor vehicle accidents.

The UIM statute does not contain a "legislative intent" section, but this court has consistently stated that the Legislature enacted the UIM statute to increase and broaden the protection of members of the public who are involved in automobile accidents. This legislative purpose "is not to be eroded . . . by a myriad of legal niceties arising from exclusionary clauses. RCW 48.22.030 should be read, therefore, to declare a public policy overriding the exclusionary language so that the intendments of the statute are read into and become part of the contract of insurance."[33] The UIM statute "is to be liberally construed in order to provide broad protection against financially irresponsible motorists."[34] This interpretation of legislative purpose has generally resulted in this court's voiding any provision in an insurance policy which is inconsistent with the statute, which is not authorized by the statute, or which thwarts the broad purpose of the statute.[35] The public policy of protecting the innocent

---

[33]*Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335, 494 P.2d 479 (1972).

[34]*Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 313, 779 P.2d 257 (1989) (quoting *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 600 P.2d 1272 (1979)).

[35]Dellwo & Conniff, *The Washington Underinsured Motor Vehicle Insurance Statute: Reading the Legislature's Mind*, 23 Gonz. L. Rev. 235 (1987-1988).

victim of an uninsured motorist is applied to the underinsured motorist to the extent that it is compatible.[36]

Petitioner Clements is correct when he stresses the protective aspect of the statute. However, cases cited by him to support his argument are those where exclusions were prohibited under existing UIM coverage.[37] While recognizing the protective policy behind the statute, this court has stated that the statute also provides for waiver of this protection by the parties.[38]

The evidence presented by Respondent Travelers supports a conclusion that Bard intended to waive UIM coverage under the Washington statute. The specific language of an insurance policy contract is read together with the statute to determine whether any terms are void and unenforceable.[39] Since waiver of UIM coverage is permitted under Washington statutes, waiver by Bard, the named insured in this case, would be neither void nor unenforceable if it meets all statutory requirements.

■ Petitioner also argues that waiver of UIM coverage will unduly burden the State's workers' compensation fund since private insurance coverage would not be available to absorb the costs. This argument is not supported by evidence in the record. Cases on appeal are decided only on evidence in the record.[40] Additionally, this court has stated that UIM

---

[36]*Britton*, at 530.

[37]*Stanton v. PEMCO*, 39 Wn. App. 904, 697 P.2d 259 (1985) (UIM coverage present when insured paid premium and effective date of policy was after amendment of UIM statute); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 707 P.2d 125 (1985) (exclusion under an uninsured/underinsured motorist policy endorsement); *First Nat'l Ins. Co. of Am. v. Perala*, 32 Wn. App. 527, 648 P.2d 472 (UIM coverage exists for a passenger in a vehicle covered by a UIM policy in which passenger is a named insured), *review denied*, 98 Wn.2d 1002 (1982); *Dairyland Ins. Co. v. Uhls*, 41 Wn. App. 49, 702 P.2d 1214 (1985) (exclusion under a UIM policy for persons under 25 invalid); *Signal Ins. Co. v. Walden*, 10 Wn. App. 350, 517 P.2d 611 (1973) (invalidity of 1-year statute of limitation provision under a UIM policy).

[38]*Johnson*, at 575.

[39]*Blackburn*, at 88.

[40]*Grobe v. Valley Garbage Serv., Inc.*, 87 Wn.2d 217, 551 P.2d 748 (1976).

coverage is a second layer of coverage for injured parties which "floats" on the top of recovery from other sources.[41] Thus, even if supported by evidence in the record, the fact that an injured party may have to seek some recovery from the State's workers' compensation fund does not of itself justify mandatory UIM coverage. The determinative fact here is that the Washington UIM statute specifically allows insured parties to reject UIM coverage if they choose.[42]

Travelers Insurance argues that the intent of Bard and Travelers at the time of the insurance contract was rejection or waiver of UIM coverage by Bard and that the policy of insurance itself is tantamount to a written waiver of UIM coverage. However, the question still remains whether that rejection met statutory requirements.

Petitioner Clements argues that the purported waiver of UIM coverage by Bard was ineffective because it was not "in writing" as required by RCW 48.22.030(4). Respondent Travelers argues that mechanistic application of this requirement would lead to results contrary to the clear intent of the parties to an insurance contract. RCW 48.22.030(4) provides that a named insured or spouse *may reject UIM coverage "in writing"*. This provision was added by a 1983 amendment.[43] No legislative history pertaining to this change could be found. The "in writing" provision, using the word "may", seems permissive, and does not of itself indicate that the rejection must be in writing. However, an ambiguity arises in the statute with the final sentence in RCW 48.22.030(4) which reads

---

[41]*Blackburn*, at 87.

[42]RCW 48.22.030(4); *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 575, 817 P.2d 841 (1991).

[43]The pertinent amendment to RCW 48.22.030(4) was "[t]he named insured may reject, in writing, underinsured coverage for ((either)) bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If the named insured has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless the named insured subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after the effective date of this act and not to any renewal or replacement policy." Laws of 1983, ch. 182, § 1.

"[t]he *requirement* of a written rejection under this subsection . . .." (Italics ours.)

 Where statutory language is unambiguous, its meaning must be derived from the wording of the statute itself.[44] Where there is ambiguity in a statute, other indicators of legislative intent may be used.[45] In resolving ambiguity, the court follows the principle that "[a] statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat the manifest object, it should receive the former construction."[46] The duty of the court in statutory construction is to ascertain and give expression to the intent of the Legislature. In analyzing the meaning of a statute, it must be read as a whole.[47] The Legislature, by the wording of the UIM rejection clause, intended that a named insured decline UIM coverage by an affirmative and conscious act and that such a rejection be in writing. Bard rejected UIM coverage in Washington only by not asking for it. In this case there was no written rejection of coverage; the policy simply did not include UIM coverage for Bard's Washington vehicles. This does not meet the statutory requirement for rejection in writing.

In arguing that the intent of the contracting parties is the sole determinative issue, Travelers ignores the fact that insurance regulatory statutes become part of insurance policies.[48]

RCW 48.22.030 provides that UIM coverage is mandatory unless the insured rejects such coverage in writing. The

[44]*State Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 641 P.2d 163 (1982).

[45]*Schillberg v. Williams*, 115 Wn.2d 809, 801 P.2d 241 (1990).

[46]*PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 120, 750 P.2d 1240 (1988) (quoting *Roza Irrig. Dist. v. State*, 80 Wn.2d 633, 497 P.2d 166 (1972)).

[47]*Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 705 P.2d 776 (1985).

[48]*Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 565, 817 P.2d 841 (1991); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 86, 794 P.2d 1259 (1990).

Washington statute was amended to require a written rejection of UIM coverage. This is a substantial statutory change which reflects intent by the Legislature to place upon an insurer the burden of obtaining a knowing written rejection in order to avoid the statutory requirement for UIM coverage. Here, the insurer apparently was aware that its insured did not wish to purchase UIM coverage. Yet the insurer did not obtain from its insured a written rejection of the statutorily required coverage.[49]

Washington is one of the states which considers UIM coverage sufficiently important to require that any rejection of it must be in writing.[50] Under our statute, UIM coverage becomes part of every automobile liability coverage by operation of law *unless* the insured party in writing agrees to a waiver or rejection.[51]

Travelers argues that because it can show that it was the intent of Bard not to purchase UIM coverage, the absence of UIM coverage in the policy should be treated as a written rejection of that coverage. If we were to hold consistent with that assertion, we would then effectively delete the legislatively created requirement for a written rejection.

In *California Cas. Indem. Exch. v. Steven*,[52] the insurance company argued that the intent of the insured and insurer was evidenced by an exclusion of certain UIM coverage in a policy, and that it constituted a sufficient written rejection of UIM coverage. In response to that argument, the California

---

[49] RCW 48.22.030(2), (4).

[50] 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 2.6, at 30 (2d ed. 1990).

[51] RCW 48.22.030(2), (3), (4); *First Nat'l Ins. Co. of Am. v. Perala*, 32 Wn. App. 527, 531, 648 P.2d 472 (UIM coverage is mandatory unless the insured specifically and unequivocally rejects such coverage), *review denied*, 98 Wn.2d 1002 (1982); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985); *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 420, 841 P.2d 1244 (1992) (noting the remedy for a failure to comply with Oregon's UIM statute is reformation of the insurance contract to include UIM coverage up to the same limits as the liability protection).

[52] 5 Cal. App. 3d 304, 306-07, 85 Cal. Rptr. 82, 83-84 (1970).

court explained that the Legislature had declared it the public policy of the State that no automobile liability insurance policy should fail to include UIM coverage unless the insured rejected such coverage in writing. The court stated:

> [b]ecause the provision of such coverage is a matter of public policy, a claim of waiver thereof is not to be determined simply by reference to the rules which courts otherwise apply to determine the intent of contracting parties. Deletion of the coverage required by the statute can be effected only by an express "agreement in writing delet[ing] the provision covering damage caused by an uninsured motor vehicle."[53]

We agree with this reasoning. A written rejection by the named insured is required by RCW 48.22.030(4) in order for UIM coverage to be legally waived in Washington. The absence of UIM coverage in an insurance policy is insufficient to fulfill the statutory mandate of a "written waiver". If UIM coverage could be waived simply by being left out of the policy, then the written rejection requirement of the statute would be completely meaningless. The Legislature has mandated that UIM coverage can only be waived by and insured by rejection in writing. Therefore, absent such a written rejection, the intent of the various parties is irrelevant to a determination of coverage.

The Legislature has drawn a bright line which we should respect. In this case, there was no written rejection of UIM coverage and therefore coverage was not waived.

CONCLUSION

Denial of summary judgment to Respondent Travelers was appropriate. RCW 48.22.030 allows for rejection of UIM coverage, but that rejection must be in writing. We reverse the decision of the Court of Appeals and affirm the Superior Court's denial of summary judgment to the Travelers Indemnity Company and its grant of summary judgment to Petitioner Robert Clements.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, GUY, and JOHNSON, JJ., concur.

---

[53]*Steven*, at 306-07.