[No. 28708-1-II.   Division Two.   March 9, 2004.]

DISCOUNT TIRE COMPANY OF WASHINGTON, INC., *Appellant*, v.
THE DEPARTMENT OF REVENUE, *Respondent*.

514

*Mark T. Higgins* and *Barbara Z. Lock* (of *Higgins Geyer & Lock, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Donald F. Cofer, Assistant*, for respondent.

HUNT, C.J. — Discount Tire Company of Washington appeals the trial court's summary judgment in favor of the State of Washington Department of Revenue in Discount Tire's tax refund action. Discount Tire argues that the trial court erroneously interpreted WAC 458-20-108 to disallow credit it had previously taken for retail sales tax refunded to customers returning defective tires under an extended warranty, by allowing the Department to collect a second tax on the sale of new replacement tires.

We hold that (1) WAC 458-20-108 applies to Discount Tire's refunds to customers for damaged or defective tires returned under the extended warranty and (2) therefore, Discount Tire is entitled to a tax credit for those refunds. We reverse.

## FACTS

Discount Tire sells, installs, and repairs automobile tires. Each tire sale triggers two excise taxes on the transaction: a business and occupation tax (B&O tax) and a retail sales tax. Discount Tire collects the retail sales tax from the customer on each tire's purchase price and remits the tax to the State of Washington Department of Revenue (Department). Discount Tire also pays B&O tax on its gross proceeds from these and other sales. It is the sales tax, however, that is at issue in this appeal.

### I. EXTENDED WARRANTY

Included in the price of each tire that Discount Tire sells is the manufacturer's limited warranty. A customer who returns a damaged or defective tire covered only by the manufacturer's warranty is limited to either repair or pro rata replacement based on tire tread wear.

For an additional fee, Discount Tire offers an optional, extended warranty. This extended warranty is among a list of options that a customer may select by checking the appropriate box on the sales contract displayed on a computer screen. If the customer selects the extended warranty, Discount Tire includes a "Certificate for Free Repair, Refund, or Replacement," which appears on the back of the tire sale invoice.

Under this extended warranty, a customer may return a defective or damaged tire for repair at no additional charge. If repair is not feasible, Discount Tire refunds the original purchase price and the sales tax to the customer, with no pro rata deduction for tire tread wear. The certificate does not, however, similarly provide for refund of the extended warranty's additional cost. Discount Tire then offers the customer a new tire at the original price, plus sales tax. But the customer is free to use the refund to purchase a new tire elsewhere.

During the relevant time period, when an extended-warranty customer used the refund to purchase a new tire, Discount Tire applied the refund to the new tire's purchase price and sales tax. Discount Tire then remitted this new sales tax to the Department, in addition to paying B&O tax on the proceeds from the sale of the replacement tire. As it did with other returns, Discount Tire credited the refunded purchase price against its gross sale proceeds under WAC 458-20-108, taking a credit for both the B&O tax and the sales tax previously remitted on the original, but now fully refunded, tire sale. The net effect was that Discount Tire remitted a single sales tax on the entire transaction, beginning with the original tire sale, through the return and refund to the customer, and ending with the new replacement-tire sale.

In December 1998, the Department began assessing a "use tax" against Discount Tire's sales of new replacement tires under the extended warranty. In essence, the Department asserted that Discount Tire owed two taxes on these successive sales and refunds: (1) an initial sales tax on the

original tire sale, even when that tire was later returned for a full refund, including sales tax, under the extended warranty; and (2) a second tax on Discount Tire's sale of a new replacement tire, also under the extended warranty.[1]

Objecting to this "double taxation," Discount Tire filed its November 2000 combined excise tax return and paid the $8,198.01 use tax, according to the Department's instruction.

## II. Litigation

In January 2001, Discount Tire filed a superior court action for refund of the use tax that it had paid or, in the alternative, "a credit for the amount of the sales tax refunded under Discount's [extended warranty] program." Clerk's Papers (CP) at 6. Discount Tire argued that it owed no use tax on replacement tires sold under its extended warranty because (1) it was not providing "services" under the extended warranty and (2) WAC 458-20-108 allows credit for the refunded sales taxes.

Discount Tire moved for summary judgment, asking the superior court (1) to order the Department to refund the $8,198.01 use tax; (2) to find that Discount Tire was entitled to a credit under WAC 458-20-108 when it refunded the sales price and sales tax to customers who returned damaged or defective tires under the extended warranty; (3) to find that Discount Tire's replacement tire sales under the extended warranty were statutory retail sales, not subject to use tax; and (4) to find that the Department's imposition of a use tax on Discount Tire's replacement-tire sales under the extended warranty was unlawful "double taxation" (sales tax had previously been collected and remitted to the Department on the replacement-tire sales). In response, the Department asked for summary judgment dismissal of Discount Tire's refund action.

---

[1] The Department did, however, allow Discount Tire a credit against the reported sales price for pro rata refunds made under the manufacturer's limited warranty, apparently because that warranty was included in the sales price.

The Department later admitted its error and abandoned the "use tax" theory during the summary judgment proceedings. But it continued to claim that (1) Discount Tire had improperly deducted from its gross sales the amounts it refunded to customers who returned tires under the extended warranty; (2) Discount Tire, thus, underpaid both its B&O and sales taxes; (3) the newly assessed "use tax" merely *replaced* Discount Tire's underpaid sales tax; and (4) therefore, Discount Tire was not entitled to any refund of the use tax.

At the summary judgment hearing, the trial court addressed whether Discount Tire was entitled to a credit against taxable gross proceeds under WAC 458-20-108 when it refunded the purchase price and sales tax on a damaged tire returned under the extended warranty. The trial court granted summary judgment to the Department ruling in relevant part:

1. The undisputed factual record establishes that:

a. In every instance during November 2000 in which plaintiff sold a new replacement tire to a customer, after making a payment to the customer pursuant to its extended warranty as alleged in its complaint, plaintiff took a deduction or credit equal to the purchase price of the original tire from the gross proceeds of sale plaintiff reported on its November 2000 combined excise tax return.

b. The deductions or credits plaintiff took resulted in corresponding reductions in both the retail sales taxes and the retailing B&O taxes plaintiff reported it owed for the November 2000 tax period.

c. Whenever plaintiff sold a new replacement tire to a customer pursuant to its extended warranty as alleged in its complaint, plaintiff sold the replacement tire at the same price the customer had paid for the damaged original tire, as required by the terms of the extended warranty.

d. Any use taxes plaintiff reported on its November 2000 combined excise tax return for new replacement tires sold pursuant to its extended warranty were less than the combination of the retail sales taxes and retailing B&O taxes

plaintiff failed to report due to the corresponding deductions or credits plaintiff took from its reported gross proceeds of sales.

. . . .

3. The deductions or credits plaintiff took were not authorized under the governing excise tax statutes or under WAC 458-20- -108.

4. Defendant is entitled to judgment as a matter of law dismissing plaintiff's complaint for refund of taxes with prejudice.

CP at 130-31.

Discount Tire moved for reconsideration, which the trial court denied. Discount Tire appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review summary judgment de novo, engaging in the same inquiry as the trial court. *Benjamin v. Wash. State Bar Ass'n*, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

### II. TAXES ON TIRE SALES

Discount Tire contends that tires returned for refunds under its extended warranty are "returned" or "defective" goods under WAC 458-20-108, thus entitling it to deduct the refunded purchase price in computing its tax liability for that tax period. The Department disagreed with Discount Tire's analysis and sought to recoup the refunded sales tax amount (in the form of a "use tax"), which it believed Discount Tire had wrongfully deducted.

## A. "Retail Sales" Tax

A customer's purchase of a tire from Discount Tire is a "sale" under RCW 82.04.040 and a "retail sale" under RCW 82.04.050(1). The customer pays and the retailer collects a retail sales tax on this transaction. The tax amount is based on the tire's "selling price." RCW 82.08.020(1). The optional extended warranty, however, is not a "retail sale" under RCW 82.04.050(1), because it is not a sale of "tangible personal property."[2] Therefore, the customer does not pay a retail sales tax on the additional fee for the extended warranty.

If the customer later returns the tire under the extended warranty, because the tire is damaged or defective, Discount Tire refunds the previously paid retail sales tax and tire purchase price to the customer; it does not, however, refund the cost of the extended warranty. Discount Tire then adjusts its "selling price" for retail sales for that tax period, which results in a credit for the previously remitted sales tax. WAC 458-20-108.

## B. "B&O" Tax

Washington's B&O tax is based upon a business's "gross proceeds of sales."[3] RCW 82.04.250(1). Thus, each tire sold is subject to the retailing B&O tax as part of Discount Tire's taxable gross sales proceeds. RCW 82.04.250(1). When a customer returns a tire, Discount Tire adjusts its "gross proceeds" downward to account for the return and, thus, lowers it tax liability for that period by the amount of B&O

---

[2] WAC 458-20-257(3)(b), covering "[n]onmanufacturer's warranties and manufacturer's warranties not included in the retail selling price of the article being sold," provides in pertinent part:

(i) When a warranty is sold for a charge separate from the charge of the product, e.g., a warranty extending the manufacturer's warranty, the sale is not a retail sale and no retail sales tax is collected on the amount charged.

(ii) When a repair is made by the warrantor under its own separately stated warranty, the value of the labor and/or parts provided is not a retail sale and no retail sales tax is collected.

[3] *See* RCW 82.04.220, .070.

tax previously paid on that sale. WAC 458-20-108. The B&O tax, however, is not at issue in this appeal.

## C. "Use" Tax

Washington also imposes a "use tax" on tangible personal property that a purchaser receives and uses but on which retail sales tax has not been previously paid. WAC 458-20--178. For example, if a person purchases an item in Oregon, which does not impose a retail sales tax, and brings the item into and uses it in Washington, that person must report the purchase and pay Washington's "use tax" in an amount equal to what the retail sales tax would have been had the item been purchased in Washington. The "use tax" thus supplements Washington's retail sales tax. WAC 458--20-178(1).

■ An item of tangible personal property may not, however, be subject both to use tax and sales tax. WAC 458-20-178(2). Once an item has been subjected to the sales tax, it may not later be subjected to use tax.[4]

## D. Department's Imposition of Use Tax Against Discount Tire

The Department initially imposed a use tax on the replacement tires Discount Tire sold to customers under the extended warranty. This tax was the Department's attempt to recoup the sales taxes that Discount Tire had remitted on the original tire sales but then refunded to customers under its extended warranty, claiming a tax credit. The Department asserts that if a Discount Tire customer obtains a refund under the extended warranty and "purchases the new tire in Washington, the customer should owe retail sales tax on *both* the first tire sale and on the second tire sale." Br. of Resp't at 13 (emphasis added). We disagree.

---

[4] That is, unless the item was the object of a successive sale. Former RCW 82.08.020(3) changed to RCW 82.08.020(5) on July 1, 2003.

█ The law does not authorize the Department to collect a use tax on replacement tires purchased by customers with refunds under the extended warranty. First, as we have explained above, "use tax" applies only to merchandise that has not already been subjected to state sales tax, and Discount Tire had collected and remitted sales tax on both the original tires and on the replacement tires. WAC 458-20-178(2). Second, WAC 458-20-257 does not authorize the use tax assessed here because it authorizes collection of use tax on *repairs* by a party other than the warrantor,[5] not on *sales*, of new tires whether under an extended warranty or not.[6]

Eventually, the Department abandoned its use tax theory and instead argued at the summary judgment proceedings that Discount Tire was not authorized to claim a credit for the purchase price and sales tax refunded to extended-warranty customers.

### III. Sales Tax on "Returned," "Defective," or Damaged Goods

A central issue is whether the damaged and defective tires returned under Discount Tire's extended warranty

---

[5] WAC 458-20-257(3)(b)(iii), governing "[n]onmanufacturer's warranties and manufacturer's warranties not included in the retail selling price of the article being sold," provides:

> When a person other than the warrantor makes a repair for the warrantor, the person making the repair is making a retail sale of the repair service to the warrantor. Retail sales tax is collected from the warrantor measured by the labor and materials provided.

Moreover, WAC 458-20-257(4)(b)(i) allows collection of "use tax" only on the parts used in the repairs, not on other repair-related costs. *See* n.6, *infra.*

[6] *See* WAC 458-20-257(4)(b), which explains the application of use tax or retail sales tax to repairs made under "[n]onmanufacturer's warranties and manufacturer's warranties not included in the retail selling price of the article being sold":

> (i) When a repair is made by the warrantor under a separately stated warranty, the warrantor is the consumer of the parts and the *parts are subject to use tax* measured by the warrantor's cost.

> (ii) When a person other than the warrantor makes a repair for the warrantor, the person making the repair is making a retail sale to the warrantor. Retail sales tax, not use tax, is collected.

(Emphasis added.)

were "returned" or "defective" goods under WAC 458-20--108. Such classification would entitle Discount Tire (1) to retain the credit it had taken for the original sales taxes it refunded to customers and (2) to receive a refund of the use tax it paid to the Department. We agree with Discount Tire that WAC 458-20-108 applies.

There is no statute specifically addressing the type of retail-sales tax credit that Discount Tire claims here. Instead, the legislature enacted an enabling statute, giving the Department broad authority to "publish rules and regulations . . . necessary to enforce provisions of this chapter and chapters 82.02 through 82.23B and 82.27 RCW." RCW 82.32.300. Using this authority, the Department promulgated WAC 458-20-108.

The Department argues that WAC 458-20-108 does not apply to refunds given in exchange for damaged or defective tires returned under an extended warranty and, therefore, Discount Tire was not authorized to take a credit when it returned the purchase price and sales tax to an extended warranty customer. The Department reasons that (1) tires returned under an extended warranty are not "refunds" under a single contract, as required under WAC 458-20-108, and (2) Discount Tire refunds the entire purchase price only where two contracts are involved: one contract for the sale of the tire and another contract for the extended warranty.

The Department further argues that WAC 458-20-108 applies only when returned or defective goods cause a "revision" of the original contract of sale, and that no such revision was involved here. The Department reasons that (1) Discount Tire's refunds to its customers are required by the extended warranty, which is an optional additional contract in the nature of an insurance or service contract, sold separately from the contract for sale of the tire; (2) such refunds are not automatically provided as part of the contract of sale for the tire; and (3) there are no revisions to the original contract when a customer returns a damaged tire under this separate, extended warranty.

Discount Tire counters that WAC 458-20-108 does not require that the customer's tax refund be made "pursuant to the sale contract" for the underlying goods. Br. of Appellant at 17-18. Rather, Discount Tire's refund of purchase price and sales tax to the customer returning a damaged tire (1) completes the transaction under the extended warranty and (2) is, in essence, a cancellation of the original tire sales contract, thereby entitling Discount Tire to adjust its gross proceeds and to take a credit for the refunded sales tax. Discount Tire further argues that (1) it makes a "bona fide refund" when it returns the original purchase price and sales tax to a customer returning a damaged tire under the extended warranty and (2) the Department's disallowance of such a credit adjustment results in taxes on both the refunded, and rescinded, original tire sale and on the sale of the new replacement tire under the extended warranty, which is unlawful "double taxation."

We now address whether tires returned for refund or replacement under Discount Tire's extended warranty are "returned," "defective," or damaged goods under WAC 458--20-108 for purposes of a retail sales tax credit.

### A. "Returned Goods"

■ We agree with the Department that damaged or defective tires returned to Discount Tire for replacement or refund under the extended warranty are not "returned goods" within the meaning of WAC 458-20-108. WAC 458--20-108(2) provides:

**Returned goods.** *When sales are made either upon approval or upon a sale or return basis,* and the purchaser returns the property purchased and the entire selling price is refunded or credited to the purchaser, the seller may deduct an amount equal to the selling price from gross proceeds of sales in computing tax liability, if the amount of sales tax previously collected from the buyer has been refunded by the seller to the buyer. If the property purchased is not returned within the guaranty period as established by contract or by customs of the trade, or if the full selling price is not refunded or credited to

the purchaser, a presumption is raised that the property returned is not returned goods but is an exchange or a repurchase by the vendor.[7]

To illustrate: S sells an article for $60.00 and credits his sales account therewith. The purchaser returns the article purchased within the guaranty period and the purchase price and the sales tax theretofore paid by the buyer is refunded or credited to him. S may deduct $60.00 from the gross amount reported on his tax return.

WAC 458-20-108(2) (emphasis added).[8]

The tire sales here were not "made either upon approval or upon a sale or return basis."[9] WAC 458-20-108(2). Rather, under the extended warranty, the customer was entitled to return a damaged or defective tire within the warranty period for repair, a full refund of the sales price, or a replacement tire. The extended warranty did not entitle the customer to purchase a set of tires, drive around

---

[7] This section does not explain the tax credit consequences if goods sold not "upon approval or upon a sale or return basis" are returned within the guaranty, or warranty, period established by contract.

[8] The Department cites *General Motors Corp. v. State*, 60 Wn.2d 862, 376 P.2d 843 (1962), *affirmed*, 377 U.S. 436, 84 S. Ct. 1564, 12 L. Ed. 2d 430 (1964). General Motors sold automobiles and parts wholesale to its retail dealers in Washington and agreed by contract to give credit to the dealers for the value of returned parts. General Motors sought to reduce its B&O tax by subtracting the credited amounts from its taxable gross proceeds of sale. The Supreme Court ruled that General Motors was not entitled to a credit under WAC 458-20-108 because the returns were repurchases, not rescissions of the original sales. The Court based its ruling, in part, on General Motors' practice of crediting its dealers in amounts equal to the prices in effect for the parts at the time of the returns, not the original prices that the dealers had paid.

In contrast, under its extended warranty, Discount Tire refunds its customers the full, original sales price of nonrepairable damaged or defective tires, plus sales tax. These extended-warranty transactions are not repurchases; rather, they are refunds for damaged or defective tires.

[9] The Uniform Commercial Code (UCC) defines "sale on approval" as sales of goods that may be returned even though they conform to the contract. RCW 62A.2-326(1). The Official Comment to RCW 62A.2-326(1) explains that the goods remain the property of the seller until the buyer accepts them. This type of sale is a bailment until the goods are finally accepted. *In re Liquidation & Receivership of Prior Bros., Inc.*, 29 Wn. App. 905, 913, 632 P.2d 522 (1981). The tire sales at issue here do not meet this definition.

Neither were the tire sales made on a "sale or return" basis because they were not sold primarily for resale. RCW 62A.2-326(1).

to see if the customer liked them, and then return them if dissatisfied or preferring a different type of tire.

Thus, damaged or defective tires returned to Discount Tire under the extended warranty do not meet the definition of "returned goods" under WAC 458-20-108(2).[10] Accordingly, WAC 458-20-108(2) does not apply here, and we do not consider this subsection further.

### B. "Defective Goods"

■■ Some of the tire sales and returns at issue here, however, do fall within the WAC 458-20-108(3) definition of "defective goods" such that Discount Tire is entitled to deduct from gross retail proceeds the refunded sales price and to receive credit for sales tax refunded to the customer. WAC 458-20-108(3) provides:

> **Defective goods.** When bona fide refunds, credits or allowances are given within the guarantee period by a seller to a purchaser on account of defects in goods sold, *the amount of such refunds, credits or allowances may be deducted by the seller in computing tax liability, if the proportionate amount of the sales tax previously collected from the buyer has been refunded by the seller.*

(Emphasis added.)

It is irrelevant to our analysis whether Discount Tire's extended warranty is a contract separate from or part of the contract for the sale of the original tire.[11] In our view, the Department's reading of WAC 458-20-108 is both strained and contrary to the plain language of the rule and to the rule's obvious purpose to allow retailers credit for sales tax refunded to customers on defective goods. Rather, WAC 458-20-108(3) clearly allows credit for refunds of sales price

---

[10] Our holding concerning the inapplicability of WAC 458-20-108(2) to damaged or defective tires returned under Discount Tire's extended warranty is limited to this narrow point. We do not purport to discuss other applications of this section to other hypothetical facts.

[11] Earlier in the litigation, Discount Tire had argued that the sales contract and extended warranty were two separate contracts.

and tax on defective goods such as the refunds given by Discount Tire under the extended warranty.

## C. Damaged Goods

The Department argues that damaged goods are qualitatively different from "defective goods" for purposes of WAC 458-20-108. But, we see no reason, for retail-sales-tax credit purposes, for different treatment when Discount Tire refunds the customer's purchase price for a damaged tire under the extended warranty.

Contrary to the Department's assertion, the language of WAC 458-20-108(1) is broad enough to include the return of damaged goods under Discount Tire's extended warranty. WAC 458-20-108(1) provides:

> *When a contract of sale is made subject to cancellation at the option of one of the parties* or to revision in the event the goods sold are defective or if the sale is made subject to cash or trade discount, *the gross proceeds* actually derived from the contract and the selling price are *determined by the transaction as finally completed.*

(Emphasis added.)

Here, the extended warranty makes the underlying tire sale "subject to cancellation" at the buyer's option if a damaged (or defective) tire is not repairable and the customer chooses to return the tire for a full refund, including the sales tax, within the extended warranty period. It is the customer's choice whether to have the tire replaced or refunded. When the customer opts for a refund under the extended warranty, the customer, in essence, cancels the underlying tire-sale contract. In our view, it is irrelevant that the customer has paid a nonrefundable, additional fee for the extended warranty, which operates to make the underlying tire-sale contract cancelable at the customer's option.

### IV. Analogy to Insurance and Service Contracts

The Department argues that Discount Tire's extended warranty is analogous to an insurance contract for

which the tire purchaser pays an extra fee.[12] Continuing the analogy, the Department then characterizes Discount Tire's sales price and tax refunds to customers as payments on the customers' "insurance claims" under the extended warranty; thus, these payments are not refunds subject to tax credit under WAC 458-20-108.

The Department also compares the extended warranty to a separate service contract regulated under chapter 48.110 RCW. We disagree with both analogies. As with the Department's two-contract argument, it is also irrelevant to our analysis whether Discount Tire's extended warranty is similar to a service contract.

RCW 48.110.020(9) provides, in pertinent part:

> "Service contract" means a contract or agreement for a separately stated consideration for a specific duration to perform the repair, replacement, or maintenance of property or the indemnification for repair, replacement, or maintenance for operational or structural failure due to a defect in materials or workmanship, or normal wear and tear.

As Discount Tire notes in its reply brief, a service contract of the type described in this statute provides only for repair or replacement of a defective or worn product. It does not provide for a refund of the original purchase price and sales tax, as does the extended warranty at issue here.

Retailers who make repairs or replacements under service contracts retain the original purchase price and sales tax the customer paid for the goods. Here, in contrast, Discount Tire refunds the full original purchase price and sales tax to the customer who returns a defective or damaged tire under an extended warranty. The Department's analogy to service contracts, therefore, does not apply.

---

[12] In its Statement of Additional Authority, the Department cites the Financial Accounting Standards Board Technical Bulletin 90-1 (FTB 90-1) in support of its position that extended warranties should be treated like separate, insurance contracts, not part of retail sales of goods. We do not find this authority persuasive here.

Similarly, payments made under insurance contracts are generally prorated or based upon depreciated values of damaged or destroyed property, often subject to a deductible borne by the insured. Moreover, insurance carriers do not typically refund the entire sales price, plus tax, when they pay on a claim, as Discount Tire does under its extended warranty. The Department's analogy to insurance contracts, therefore, does not apply.

## CONCLUSION

We agree with Discount Tire that the Department cannot *both* (1) retain the previously remitted sales tax that Discount Tire refunds to customers returning damaged or defective tires under the extended warranty and (2) collect another sales tax when Discount Tire sells the customer a new replacement tire for the original price under the extended warranty. Rather, the Department can retain only one sales tax under these circumstances.

We hold that (1) Discount Tire properly took a retail sales tax credit under WAC 458-20-108 each time it refunded the purchase price and sales tax on a damaged or defective tire returned by a customer under the extended warranty and (2) the Department improperly disallowed this credit to Discount Tire by imposing an additional use tax.

Reversed.

SEINFELD and HOUGHTON, JJ., concur.