

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARRELL R. AXON and TERESA E. MAHONEY-AXON, husband and wife, and the marital community composed thereof, | ) ) ) ) ) | No. 38068-8-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| FREEDOM R.V., INC., a Washington corporation; BARRY DANZIG and JANE DOE DANZIG, wife and husband and the marital community comprised thereof; AMERICAN GUARDIAN WARRANTY SERVICES, INC., a foreign corporation; TSR PRODUCTS, INC., a foreign corporation; INSPIRUS CREDIT UNION, a Washington Credit Union; WESTERN SURETY COMPANY, a foreign corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| KEYSTONE RV COMPANY, a foreign corporation, | ) ) ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Darrell Axon and Teresa Mahoney-Axon appeal the

trial court's summary judgment dismissal of their Consumer Protection Act (CPA),

chapter 19.86 RCW, claim against Keystone RV Company. On appeal, the Axons raise

two arguments. They first argue that Keystone's marketing brochure creates a deceptive net impression that their recreational vehicle (RV) is designed for and suitable for full-time living. They also argue that the warnings contained in the owner's manual produced by Keystone are deceptive because they minimize the true risks associated with living in the RV full time.

We conclude that Keystone's brochure is not deceptive because it is unlikely to mislead a reasonable consumer to think the RV is intended for full-time residential use. We also conclude that the brochure and the warnings contained in the owner's manual could not have misled the Axons because there is no evidence they saw them. We affirm the trial court's summary judgment dismissal of the Axons' CPA claim and deny the parties' requests for reasonable attorney fees.

FACTS

The Axons, themselves, did not submit a declaration in opposition to Keystone's summary judgment motion. Rather, they submitted a few declarations from a federal action involving different plaintiffs and Keystone. The only way to provide context to the Axons' CPA claim is to discuss the allegations in their complaint.

2

No. 38068-8-III
*Axon v. Freedom R.V., Inc.*

A.    ALLEGATION IN COMPLAINT[1]

The Axons' complaint asserts numerous causes of action against several entities.

We limit our discussion to the only cause of action on appeal—the Axons' CPA claim

against Keystone.

In June 2018, the Axons purchased a used RV, intending to use it to live in full

time with their daughter.  They had found online that Freedom RV in Liberty Lake,

Washington, was selling a slightly used 2018 Fuzion fifth-wheel RV, manufactured by

Keystone RV Company.  They telephoned sales staff at Freedom RV and told them of

their intent to buy a safe, reliable RV to live in full time.  Freedom RV's sales staff

confirmed they had a used 2018 Fuzion in stock and assured the Axons it was safe and

reliable.  The Axons ultimately purchased it.

While living in their RV, the Axons developed cold and flu symptoms that they

believe were a result of mold growth caused by living in a moist and humid environment

for prolonged periods.[2]  Keystone's owner's manual cautions consumers against

---

[1] The Axons describe their complaint as "verified."  The so-called verification
language states: "The facts contained in this complaint are true and accurate to the best of
[our] knowledge."  Clerk's Papers (CP) at 26.  The Axons' allegations, not being sworn
to under oath, are not "facts" for purposes of a summary judgment motion.  *See* CR 56(e)
(only admissible evidence is competent to support or oppose summary judgment).

[2] Despite making allegations of physical injuries, the Axons' complaint states they
are not seeking damages for personal injuries, but only for economic damages.

prolonged occupancy. The Axons never read the owner's manual, which they contend is too long to read, and they therefore assert that Keystone failed to warn them that RVs are not designed for residential use. They assert they would not have purchased the RV if they had known they would be at risk for various health hazards by living in the RV.

B.    SUMMARY JUDGMENT

   *1.    Keystone's summary judgment motion*

   In its motion, Keystone argued the Axons lacked evidence that it engaged in unfair or deceptive practices or its alleged unfair or deceptive practices caused the Axons' damages.

   Keystone noted that while the Axons alleged Keystone deceptively marketed its RVs as designed for prolonged occupancy, they failed to identify or produce any such deceptive marketing during discovery. Nor could the Axons show the owner's manual's warnings about prolonged occupancy were deceptive because they failed to show it had the capacity to deceive a substantial portion of the public.

   Keystone argued that the Axons' CPA claim also failed because they failed to establish any causal link between the allegedly unfair or deceptive practices and their damages. Keystone asserted that the Axons admitted in their complaint that they had not read the owner's manual or the allegedly deceptive cautions. Keystone also asserted the

4

No. 38068-8-III
*Axon v. Freedom R.V., Inc.*

Axons also had refused to identify in their discovery answers any marketing materials on which they had relied in purchasing their RV.

In support of its motion, Keystone included the Axons' responses to the interrogatories and requests for production. When asked to identify and produce testimonials and marketing material they had reviewed before purchase and Keystone's allegedly deceptive acts and omissions, the Axons had responded only with a lengthy objection about contention interrogatories, citing federal authorities.

2.      *The Axons' response*

The Axons argued that the court should take judicial notice of a then-pending putative class action filed by RV owners against Keystone in the United States District Court for the Western District of Washington, *Cole v. Keystone RV Company*.[3] They argued that because the same causes of action were asserted in the federal suit and because the court denied Keystone's motion to dismiss under Federal Rule of Civil Procedure (FRCP) 12, the superior court would effectively overrule the District Court's order if it granted Keystone's motion for summary judgment.

_____

[3] No. 3:18-CV-05182 RLB. The Axons' attorney represented the named plaintiffs in *Cole*. Class certification was denied, and the case was later dismissed in its entirety following Keystone's motion for summary judgment; an appeal is pending in the Ninth Circuit. *Cole*, 2021 WL 3111452 (W.D. Wash. July 22, 2021) (court order).

The Axons supported their response with a number of exhibits. Two exhibits were materials produced by Keystone: a marketing brochure advertising the Fuzion RV model purchased by the Axons, and chapter 3 of the owner's manual, entitled "Effects of Prolonged Occupancy and Indoor Air Quality." Clerk's Papers (CP) at 134 (boldface omitted). Seven exhibits were filings from the federal *Cole* case, including three expert declarations.

### a.     *The marketing brochure*

The brochure advertises the Fuzion as a "Fifth Wheel Toy Hauler." CP at 117 (some formatting omitted). Included floor plans show the various models feature living space in the front of the trailer with a garage area in the rear. One page shows a group sitting around a campfire on a rocky beach next to the RV; around them are a boat on a trailer, a small off-road vehicle, and a dirt bike. Photographs of the Fuzion's interior show rolling hills or forests outside the windows; there are no people featured in the interior pictures.

Another page in the manual tells the reader: "Don't limit yourself to highways and freeways[.] Venture off the beaten path to where your ultimate playground awaits. Whether it's the mountains, the desert, the lake or even wine country. . . . Go where you want to go and do what you want to do." CP at 121 (some formatting omitted). Under

large block text stating "Fuzion Flexibility," the same page states: "Let's [sic] you leave it all behind, without leaving it all behind." CP at 121 (some formatting omitted).

On a page detailing 90 of the Fuzion's standard options, 8 features are advertised as residential: a "30″ residential convection microwave[;] residential cabinet hardware[;] residential furniture w/heated seats[;] 60″ x 80″ residential size queen bed[;] residential one piece fiberglass shower w/seat[;] residential, adjustable, hand-held massaging shower fixture[;] 40″ x 80″ residential size loft mattress[; and] residential glass pass through door[.]" CP at 129 (some formatting omitted). The top of the page also directs readers to the Fuzion webpage on Keystone's website.

On a page listing Fuzion "innovation," the brochure states: "Fuzion sets the standard in toy hauler construction." CP at 130 (some formatting omitted). One innovation is "residential in-floor heat-duct system just like in your home." CP at 130 (some formatting omitted). Another is the "exclusive Fuzion adjust-a-track frame welded tie down system," which is billed as "the most rugged, toughest tie-down you can find in any toy hauler. . . . Because your toys are important, be sure your new toy hauler is a Fuzion with the Adjust-A-Track." CP at 131 (some formatting omitted). The other innovations are color coded wiring, a high-powered air conditioner, a six-layer paint job, reinforced sliding rooms, a suspension with increased axle travel, a ramp door that can

transform into a patio, a four-stage inspection process, and a three-year limited structural

warranty.

    b.  *The owner's manual*

Chapter 3 of the owner's manual is titled, "Effects of Prolonged Occupancy and

Indoor Air Quality." CP at 134 (boldface omitted). The chapter includes six

subheadings: "Effects of Prolonged Occupancy[,] Improving Indoor Air Quality[,] Tips to

Avoiding Condensation[,] Where There Is Moisture, There May Be Mold[,]

Formaldehyde & Recreation Vehicles[, and] Web Sites of Interest[.]" CP at 134-37

(boldface omitted).

On the first page of the chapter in the "Effects of Prolonged Occupancy and Indoor

Air Quality" section, there is a bold "CAUTION" warning with an exclamation point in a

triangle. CP at 134. The warning states:

> Your recreational vehicle was designed primarily for recreational use and
> short-term occupancy. Prolonged Occupancy can lead to premature
> component wear/failure and create conditions, which if not managed
> properly, may be hazardous to your health and/or cause significant damage
> to your recreational vehicle. These types of "Damage" are NOT covered
> under the Limited Warranty.

CP at 134. The section explains that due to the small size and tight construction of

recreational vehicles, "the normal living activities of even a few occupants (or animals)

will lead to rapid moisture saturation of the air contained in the RV. . . . Unless the water

8

vapor is carried outside by ventilation or condensed by a dehumidifier, it will condense on the inside [of] the unit." CP at 134. It goes on to describe how the condensation may happen out of sight and may damage the RV and personal belongings. It further describes the importance of ventilating the RV, keeping it clean, and managing indoor air pollutants, including a list of common indoor air pollutants. It concludes by identifying "people most at risk for poor indoor air quality" comprising people with asthma, allergies, chronic lung diseases, and heart disease, children, and the elderly. CP at 134.

The next section, "Improving Indoor Air Quality," lists recommendations from the Centers for Disease Control and Prevention (CDC) and the Environmental Protection Agency (EPA). CP at 135 (boldface omitted). They both include tactics such as increasing ventilation and removing the sources of pollution. The section includes the address of the EPA's webpage on indoor air quality.

In "Tips to Avoiding Condensation," the manual describes ways to reduce indoor moisture and the temperature differences that lead to condensation. CP at 136 (boldface omitted). It states that the RV user may need "to invest in a dehumidifier to reduce the health risk to you or your family as well as prevent damage to your RV." CP at 136. The section "Where There Is Moisture, There May Be Mold" describes molds as pollutants that can be inhibited by controlling the moisture in the air. CP at 136 (boldface omitted).

It again gives advice on lowering indoor humidity, recommends preventing and killing mold growth, and states that "[i]n extreme conditions, a dehumidifier may be necessary." CP at 136.

The fifth section, "Formaldehyde & Recreational Vehicles," describes formaldehyde as both a naturally occurring substance and "an industrial chemical used in the manufacture of some of the components used in the construction of recreational vehicles . . . ." CP at 137 (boldface omitted). It states that the gas "can cause watery eyes, burning sensations in the eyes and throat, nausea, and difficulty breathing." CP at 137. It cites the CDC and EPA recommendations on improving indoor air quality through ventilation and running the air conditioner and again notes that due to an RV's small size, there is less air exchange than in a home. It recommends that RV users take any questions about the health effects of formaldehyde and other air pollutants to their doctor or health department. It also states that Keystone's RVs comply with the California Air Resource Board's emission standards.

Finally, the last section on "Web Sites of Interest" points the reader to websites "which maintain information about indoor air pollutants, including molds and formaldehyde, along with ways to improve indoor air quality[.]" CP at 137 (boldface

10

omitted).  The websites belong to the EPA, the CDC, the Formaldehyde Council, and the

Recreational Vehicle Industry Association.

> c.      *Documents from the* Cole *case*

The Axons included three expert declarations that were filed in support of class

certification in *Cole*.  The first was from Joellen Gill, an expert in human factors

engineering, who testified that the warning provided by Keystone in its owner's manual

was inadequate to alert consumers to air quality dangers.  The second was from Dr. David

Buscher, M.D., who testified that mold and formaldehyde are toxic to humans.  The third

was from John Walker, an expert in loss of use and diminished value of motor vehicles,

who testified that the presence of mold and formaldehyde diminished the value of

Keystone's RVs.

> 3.      *Keystone's reply*

In its reply, Keystone argued that the Axons' evidence went toward a failure to

warn under a products liability claim, not a deceptive act under the CPA.  They argued

there was no evidence that the Axons had read either the marketing brochure of the

owner's manual before their purchase nor was there evidence the documents had the

capacity to deceive the public into thinking Keystone RVs were intended to be used as a

full-time residence.  The manual specifically advises consumers against prolonged

occupancy and cannot deceive a substantial portion of the public that the RV was meant to be used as a full-time residence. The brochure contains no representations that suggest the Fuzion RV is suitable for anything other than short-term occupancy while on vacation. Keystone also argued there was no evidence of causation, which, contrary to the Axons' assertions, is required for a CPA claim. Finally, Keystone argued that the court's order on Keystone's FRCP 12(b)(6) motion to dismiss in *Cole* was irrelevant due to the lack of analysis and different legal standards.

> *4.      Rulings on Keystone's summary judgment and reconsideration motions*

The superior court granted Keystone's summary judgment motion. It thereafter denied the Axons' reconsideration motion. The remaining defendants in the case were all dismissed or settled, and the court entered final judgment on March 9, 2021.

The Axons timely appealed the trial court's summary judgment dismissal of their CPA claim against Keystone and its denial of their reconsideration motion.

## ANALYSIS

A.      SUMMARY JUDGMENT STANDARD

A party moving for summary judgment must show there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends. *Clements v.*

*Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). In deciding a motion

for summary judgment, the trial court views all facts and reasonable inferences therefrom

in the light most favorable to the nonmoving party. *Id.*

A defendant moving for summary judgment may meet its initial burden by

showing there is an absence of evidence to support the plaintiff's case. *Friends of Moon

Creek v. Diamond Lake Improvement Ass'n*, 2 Wn. App. 2d 484, 494, 409 P.3d 1084

(2018). If the defendant meets this burden, the burden then shifts to the plaintiff to set

forth specific facts demonstrating a genuine issue for trial. *Id.* If the nonmoving party

fails to make a showing sufficient to establish an element essential to their claim and on

which that party bears the burden of proof at trial, then the trial court should grant the

defendant's motion. *Burton v. Twin Commander Aircraft, LLC*, 171 Wn.2d 204, 223, 254

P.3d 778 (2011).

B.      CPA CLAIM

The Axons contend summary judgment on their CPA claim was improper. We

disagree.

Washington's CPA was enacted by the legislature "in order to protect the public

and foster fair and honest competition." RCW 19.86.920. It should "not be construed to

prohibit acts or practices which are reasonable in relation to the development and preservation of business . . . ." *Id.*

A private party bringing a claim under the CPA must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

The Axons assert two arguments why the trial court erred in granting Keystone's motion for summary judgment: (1) Keystone's marketing brochure creates a deceptive net impression that it is designed for and suitable for full-time living, and (2) the warnings contained in the owner's manual produced by Keystone are deceptive because they minimize the true risks associated with living in the RV full time. We address each argument in turn.

### 1. Whether the advertising brochure is deceptive

When "the relevant operative facts are undisputed, whether [an] act or practice is 'unfair or deceptive' is a question of law." *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 317, 472 P.3d 990 (2020). Here, the contents of the advertising brochure are undisputed. Whether the brochure is deceptive therefore is a question of law.

A plaintiff need only show that the act or practice had the capacity to deceive a substantial portion of the public, not that it was intended to deceive the public. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009). "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Id.* at 50 (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). A communication can be accurate but still deceptive if it conveys a deceptive net impression. *Id.* (citing *Fed. Trade Comm'n v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)).

The Axons point to a number of Fuzion features that are advertised as residential and comparable to what one would find in a home. This is not sufficient to create a net impression that the Fuzion is suitable for full-time living.

Inherent in the phrase "recreational vehicle" is the concept that an RV is for recreational living, not residential living. The Fuzion's recreational character is even more blatant: it is specifically described as a "toy hauler" on the cover of and throughout the brochure. The imagery in the brochure shows people using the Fuzion to camp on a beach with their "toys"—a boat, a small off-road vehicle, and a dirt bike. The imagery in the brochure is focused on the outdoors: it shows people sitting around a campfire.

15

This is consistent with the brochure's invitation to potential owners to "leave it all behind, without leaving it all behind." Residential features are a selling point, but not to the extent that it suggests the RV is a "condominium or apartment on wheels." Br. of Appellant at 5. On the page listing the Fuzion's "standards and options," only 8 of the 90 features are noted as residential, such as cabinet hardware, mattresses, microwave, and showerhead. The only "residential" feature that is prominently featured is the air-conditioning system, which "achieves 15% greater airflow" thanks to its residential-style design. CP at 128 (some formatting omitted). These minor "residential" luxuries do not create the net impression that the Fuzion toy hauler is intended for residential living instead of a comfortable way to enjoy the outdoors.

We conclude that the Fuzion marketing brochure is not deceptive because it is not likely to mislead a reasonable consumer to think the RV is intended for full-time residential use.[4]

---

[4] There also is no admissible evidence the Axons reviewed the brochure prior to purchasing their RV. As explained in the first footnote, the unsworn allegations in the complaint are not "facts" for the purpose of summary judgment. So even if we concluded that the brochure was deceptive, the Axons could not establish causation; that is, that the purportedly deceptive brochure caused them to purchase the RV for full-time residential use.

16

> 2.      *Whether the owner's manual is deceptive by minimizing the risks of full-time residential use*

The Axons acknowledge the owner's manual discloses information about the risks of prolonged occupancy. They argue that these disclosures are insufficient, however, and that more obvious and detailed disclosures are necessary.

The Axons rely on the declaration of Joellen Gill, filed in the *Cole* case in federal court. Her declaration states that the warnings in the owner's manual are insufficient because RV owners are unlikely to read the owner's manual in its entirety. A warning that is merely insufficient is not the type of conduct the CPA is intended to address: "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

The owner's manual discusses the ease with which mold can develop in an RV and the risks posed by mold and formaldehyde. It encourages RV owners to properly vent their RV and use dehumidifiers. It further encourages RV owners to consult with their doctor and directs them to specialized resources. It does not minimize or try to hide the possible negative consequences of living in an RV. We conclude that the owner's manual is not deceptive because it does not mislead or misrepresent the dangers of mold and formaldehyde.

17

But even were we to conclude otherwise, the Axons cannot prevail on this, their second argument, because they failed to present facts sufficient to establish causation, an element on which they bear the burden of proof at trial.

Because of the difficulty of proving a negative, Washington courts recognize a rebuttable presumption that a plaintiff has relied on omitted material facts[5] to establish causation in a CPA claim. *See Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 197 Wn. App. 875, 886, 391 P.3d 582 (2017). The presumption of reliance may be overcome by a showing "that the plaintiff's decision would have been unaffected even if the omitted fact had been disclosed." *Morris v. Int'l Yogurt Co.*, 107 Wn.2d 314, 329, 729 P.2d 33 (1986).

Here, the Axons claim the Fuzion owner's manual omitted material information about the health hazards of mold and formaldehyde. If true, this claim is entitled to a presumption of reliance, which Keystone may rebut by showing the Axons' decision would not have changed had the manual disclosed additional details about the risks of mold and formaldehyde. Keystone has done so here.

---

[5] The Gill declaration, filed by the Axons, does not conclude that Keystone omitted material facts. Rather, the declaration asserts there was so much information in the owner's manual that a consumer would not likely read it.

18

The Axons have repeatedly indicated they did not read the Fuzion owner's manual before purchasing their RV. Therefore, their decision to purchase the Fuzion would not have changed had the owner's manual provided more detail about the risk of mold and formaldehyde.

We conclude that the Axons failed to present evidence of causation on their claim of deceptive omission, and their CPA claim fails on that ground as well.[6]

C.    ATTORNEY FEES

Both parties request attorney fees on appeal. We decline each party's request.

The Axons request attorney fees under RCW 19.86.090, which allows attorney fees for a prevailing plaintiff in a CPA claim. Because the Axons did not prevail, we do not award them attorney fees.

Keystone requests attorney fees under RAP 18.1(a), which permits recovery of reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover reasonable attorney fees . . . ." Keystone fails to specify what applicable law supports its fee request, so we deny it. *See Wilson Court Ltd. P'ship v. Tony Maroni's,*

---

[6] The Axons discuss the dealers and manufacturers statute, chapter 46.70 RCW, in their briefing. They argue the first three elements of their CPA claim are established because Keystone violated chapter 46.70 RCW. We need not address this argument, given our conclusion that the Axons cannot establish the fourth CPA element, causation.

No. 38068-8-III
*Axon v. Freedom R.V., Inc.*

*Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998) (request for attorney fees on appeal must be supported by some basis or reasoning).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                          Pennell, J.